WILLIS EDWARD BRANCH, Plaintiff v. HIGH ROCK REALTY, INC. and FRANKIE BYRD, individually and as agent of HIGH ROCK REALTY, INC., Defendants

No. COA01-715

(Filed 2 July 2002)

**1. Contracts— acquisition of real estate—apparent authority of realtor**

The trial court properly granted defendants' motion for judgment notwithstanding the verdict as to plaintiff's claim for breach of contract in an action arising from an attempt to buy real estate where a realtor with defendant High Rock orally agreed to attempt to facilitate plaintiff's purchase of certain property; the realtor was acting within the scope of his apparent authority when he did so and the principal's liability is determined by the authority which a person exercising reasonable care would believe had been conferred on the agent; plaintiff knew or should have known that the realtor could no longer act for High Rock after he left to form his own agency; and there was no evidence that plaintiff ever entered into any agreement with another High Rock realtor who eventually sold the property to a third-party.

**2. Fiduciary Relationships— breach of fiduciary duty—acquisition of real estate—insufficient evidence**

The trial court properly granted defendants' motion for judgment notwithstanding the verdict on a breach of fiduciary duty claim arising from an alleged agreement with a realtor for the

acquisition of real estate where there was no evidence of a fiduciary relationship between plaintiff and defendants.

Appeal by plaintiff from order entered 29 January 2001 by Judge Catherine C. Eagles in Surry County Superior Court. Heard in the Court of Appeals 14 March 2002.

*Max D. Ballinger for plaintiff-appellant.*

*Karl N. Hill, Jr., for defendant-appellees.*

MARTIN, Judge.

Plaintiff brought this action against High Rock Realty, Inc., (hereinafter "High Rock") and Frankie Byrd, alleging claims for breach of contract, breach of fiduciary duty, unfair and deceptive practices, fraud, constructive fraud, negligence, gross negligence, and punitive damages. Defendants answered, denying wrongdoing and asserting counterclaims for libel.

Evidence at trial tended to show that over the course of several years, plaintiff, Willis Edward Branch, had acquired several adjoining tracts of land on High Rock Lake in Davidson County, North Carolina. Plaintiff also desired to acquire Joan Craven's property (hereinafter "Craven property") which adjoined the tracts of land that he already owned. In August of 1998, plaintiff learned from a neighbor that Ms. Craven was planning to sell her property on High Rock Lake after the first of January, 1999. Shortly thereafter, Frank Fry, a real estate agent with defendant High Rock, contacted plaintiff in order to inform him that he had listed property belonging to Dr. Wilkins, which also adjoined plaintiff's property. Plaintiff bought the Wilkins property and in that transaction, Mr. Fry acted as agent for the seller.

While plaintiff and Mr. Fry were in contact regarding the Wilkins property, plaintiff employed defendant High Rock, and its agent, Mr. Fry, to find a renter for a house plaintiff owned at High Rock Lake. A renter was found and plaintiff paid defendant High Rock for its services.

On 12 October 1998, the day of the closing on the Wilkins property, plaintiff advised Mr. Fry that he had heard that the Craven property was going to be for sale and that he was interested in purchasing the property. According to both plaintiff and Mr. Fry, they entered into an oral agreement pursuant to which defendant High Rock would attempt to secure the Craven property for plaintiff to purchase. In

return, defendant High Rock was to receive a sales commission either from Ms. Craven or from plaintiff, depending on whether High Rock acted as the seller's sub-agent or as agent for the plaintiff, as buyer. Mr. Fry advised plaintiff that he would ask defendant Frankie Byrd, another real estate agent with defendant High Rock, to assist in the matter, since he believed that Ms. Byrd knew Ms. Craven and may have previously worked with her on other matters.

On 13 October 1998, the day after the closing on the Wilkins property, Ms. Byrd agreed with Mr. Fry that she would contact Ms. Craven and ask her whether she was interested in selling her property. After talking to Ms. Craven, Ms. Byrd told Mr. Fry that Ms. Craven was not ready to sell the property at that time but would be ready to sell after the first of the year. Mr. Fry called plaintiff and informed him that Ms. Byrd had checked on the Craven property for him and confirmed that it would be for sale after the first of the year.

Subsequent to the 12 October 1998 agreement between plaintiff and Mr. Fry, plaintiff would periodically contact Mr. Fry; Mr. Fry would check with Ms. Byrd regarding the status of the property, and then Mr. Fry would report back to plaintiff. Mr. Fry and plaintiff had numerous conversations regarding the Craven property. Among the documented calls from plaintiff to Mr. Fry were the following: 21 October 1998; 30 October 1998; 14 November 1998; 27 December 1998; 15 January 1999; 28 January 1999; 31 January 1999; 2 February 1999; 3 March 1999; 20 March 1999; 29 March 1999; and 19 April 1999. Additionally, plaintiff testified that he spoke to Mr. Fry in person regarding the Craven property on 24 October 1998; 27 October 1998; and 12 December 1998. Mr. Fry called plaintiff to discuss the status of the Craven property on the following dates: 1 September 1998; 1 January 1999; 28 January 1999; 10 March 1999; 2 April 1999; and 19 April 1999. From 12 October 1998 through mid-April 1999, Ms. Byrd advised Mr. Fry that Ms. Craven was not yet ready to sell the property.

On 8 January 1999, Mr. Fry left employment with defendant High Rock and opened his own real estate company, Fox Creek Realty, Inc., (hereinafter "Fox Creek"). Mr. Fry testified that Ms. Byrd indicated that she would continue to attempt to secure the Craven property for plaintiff after Mr. Fry left the company. However, Ms. Byrd testified that she and Mr. Fry made no agreement that she would assist plaintiff in acquiring the Craven property. According to Ms. Byrd, at the time Mr. Fry left the agency, she told him that if she heard

anything about the Craven property, she would let him know. Ms. Byrd testified that she merely returned Mr. Fry's calls and kept him informed about the Craven property as a courtesy to a fellow realtor.

On 1 February 1999, plaintiff signed a buyer agency agreement with Fox Creek which provided that Fox Creek was plaintiff's exclusive agent to assist plaintiff in the acquisition of real property in Davidson County, North Carolina, where the Craven property was located.

On 13 April 1999, Ms. Byrd and Olive Stutts, another agent for defendant High Rock, met Ms. Craven at the Craven property, at which time Ms. Craven signed an agreement to list her property for sale with defendant High Rock. At the request of Ms. Craven, the listing agreement was dated 19 April 1999 because Ms. Craven needed a few days to get some yard work and cleaning done before the property was shown. The listing agreement included the asking price.

On 17 April 1999, Ms. Byrd advised Mr. Fry by phone that Ms. Craven would be coming in on Sunday, 18 April 1999 or Monday, 19 April 1999 to list the property. Ms. Byrd informed Mr. Fry that she did not yet know the price Ms. Craven would be asking for the property and that the property could not be shown before Monday.

On the evening of Saturday, 17 April 1999, Ms. Byrd informed Randy and Susan Thomason that she would have a new listing at the lake on Monday. On Sunday, 18 April 1999, Ms. Byrd made an appointment with the Thomasons to show them the Craven property on Monday, 19 April 1999, at 8:00 a.m. On 19 April 1999, around 9:10 a.m., plaintiff called Mr. Fry to ask whether the property had become available. Mr. Fry told plaintiff that he did not know the status of the property since he had been unable to reach Ms. Byrd by phone that morning. Ms. Byrd returned Mr. Fry's call between 9:00 and 9:15 a.m. on 19 April 1999 and told him that the Craven property was available and that the asking price was $219,500. Mr. Fry immediately called plaintiff with that information. Plaintiff told Mr. Fry that he could go that day to look at the property but that it would be more convenient for him to go on Tuesday. Mr. Fry called Ms. Byrd and set up an appointment for plaintiff to look at the property at 9:00 a.m. on 20 April 1999.

Between 12:30 and 1:30 p.m. on 19 April 1999, Mr. Fry called Ms. Byrd to discuss another piece of property. Mr. Fry testified that dur-

ing this conversation, Ms. Byrd told him that she had accepted a full price cash offer on the Craven property. Ms. Byrd, however, testified that she did not have an accepted offer by the Thomasons until between 3:30 and 4:00 p.m. on 19 April 1999. By negotiating the sale of the Craven property to the Thomasons, Ms. Byrd received the entire commission. If plaintiff had bought the property, Ms. Byrd would have been required to share the commission with Mr. Fry.

After Mr. Fry learned that there was an accepted offer on the Craven property, he notified plaintiff. On 20 April 1999, plaintiff met with Ms. Stutts to express his concern that the agency had not properly handled the sale of the Craven property. Ms. Stutts advised plaintiff that the Craven property had been sold and that there was nothing plaintiff could do about it.

On 23 April 1999, plaintiff went to Ms. Craven's home to deliver a letter that he had written explaining his efforts in attempting to purchase the Craven property and requesting that Ms. Craven refuse to sell her property to another purchaser. Plaintiff expressed to Ms. Craven that he felt the real estate agents had mishandled the sale of the property. Ms. Craven told plaintiff that she felt Ms. Byrd had handled the sale efficiently, ethically, and within the rules and guidelines of a licensed broker. Ms. Craven told plaintiff that he could make a backup offer. Plaintiff's backup offer contained certain conditions, including requirements for an inspection, an appraisal, and approval for a loan.

After the Thomasons acquired the property, plaintiff attempted to purchase the property from them. The Thomasons' asking price was $250,000. On 15 June 1999, the Thomasons received an offer from Mr. Fry acting on plaintiff's behalf for a lesser amount than the asking price. The Thomasons later sold the property to another party for $237,500 and plaintiff bought the property from that party for $248,000, which was $28,500 more than Ms. Craven's asking price.

There was never a written agreement between plaintiff and defendants regarding this matter. Ms. Stutts testified that it was the policy of defendant High Rock that all agency agreements be in writing. In addition, the company's policy required, when an agent left the company as Mr. Fry did, that all agreements that the leaving agent had with buyers or potential buyers of property became null and void, unless the agent had an offer in progress which was proceeding to a closing.

At the conclusion of plaintiff's evidence and at the conclusion of all the evidence, defendants moved for a directed verdict pursuant to G.S. § 1A-1, Rule 50 on the grounds there was insufficient evidence to send plaintiff's claims to the jury. Defendants contended there was no evidence that a contract existed between plaintiff and defendant High Rock or between plaintiff and Ms. Byrd to act as buyer's agent for plaintiff. The trial court granted defendants' motion for directed verdict as to plaintiff's claims of fraud, negligence, gross negligence, and punitive damages, but denied the motion with respect to plaintiff's remaining claims. Plaintiff's motion for directed verdict as to defendants' counterclaims was also denied. A jury concluded that a contract existed between plaintiff and defendant High Rock pursuant to which defendant High Rock had agreed to act as plaintiff's agent to purchase the Craven property, that the agreement was in existence in April 1999, that defendant High Rock had breached the agency contract, and that plaintiff was entitled to recover $28,500 for breach of contract. The jury also found that defendant High Rock had breached its fiduciary duty to plaintiff and awarded him $28,500 for this claim. Finally, the jury answered the issues with respect to defendants' counterclaims for libel in favor of plaintiff.

After the verdict, plaintiff moved that the court enter judgment upon the jury's verdict, that damages be trebled pursuant to Chapter 75 of the North Carolina General Statutes, and that reasonable attorney's fees be awarded plaintiff. Defendants moved for judgment notwithstanding the verdict pursuant to G.S. § 1A-1, Rule 50 or, in the alternative, for a new trial pursuant to G.S. § 1A-1, Rule 59. The trial court denied plaintiff's motion and granted defendants' motion for judgment notwithstanding the verdict, and conditionally granted a new trial upon plaintiff's claims in the event the grant of judgment notwithstanding the verdict is vacated or reversed on appeal. Plaintiff appeals.

---

Plaintiff contends the trial court erred in granting defendants' motion for judgment notwithstanding the verdict and setting aside the jury's verdict.

A motion for judgment notwithstanding the verdict pursuant to G.S. § 1A-1, Rule 50(b) is, in essence, a renewal of an earlier motion for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974). The standard of review of a ruling entered upon a motion for judgment notwithstanding the verdict is

whether, upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury.

*Fulk v. Piedmont Music Center*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000). Such a "motion should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim." *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998).

[1] We first address plaintiff's contention that the trial court erred in granting defendants' motion for judgment notwithstanding the verdict on plaintiff's breach of contract claim. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Further, a principal is liable upon a contract made by its agent with a third person when that agent acts within the scope of his or her actual authority; when an unauthorized contract has been ratified; or when the agent acts within the scope of his or her apparent authority, unless the third person has notice that the agent is exceeding actual authority. *Olvera v. Charles Z. Flack Agency, Inc.*, 106 N.C. App. 193, 415 S.E.2d 760 (1992).

In the present case, the evidence shows that Frank Fry, while a real estate agent with defendant High Rock, orally agreed with plaintiff that he and defendant High Rock would attempt to facilitate plaintiff's purchase of the Craven property. In making this agreement, Mr. Fry was acting within the scope of his apparent authority since he had no actual authority from defendant High Rock to enter into such oral agency agreements with buyers or prospective buyers. Apparent authority "is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses." *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 31, 209 S.E.2d 795, 799 (1974). Pursuant to the doctrine of apparent authority, the principal's liability is to be determined by what authority a person in the exercise of reasonable care was justified in believing the principal conferred upon his agent. *Heath v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 97 N.C. App. 236, 388 S.E.2d 178, *disc. review denied*, 327 N.C. 428, 395 S.E.2d 678 (1990). We note that " '[a]ny apparent authority that might otherwise exist vanishes in the presence of the third person's knowledge, actual or constructive, of what the agent is, and what he is not, empowered to do for his principal.' " *Rollins v.*

*Junior Miller Roofing Co.*, 55 N.C. App. 158, 161, 284 S.E.2d 697, 700 (1981) (citation omitted).

When Mr. Fry left defendant High Rock to establish his own real estate agency, Fox Creek, plaintiff knew or should have known that Mr. Fry could no longer act on behalf of defendant High Rock in assisting plaintiff with the acquisition of the Craven property. Evidencing such knowledge by plaintiff that defendant High Rock was no longer acting as his agent to acquire the Craven property, plaintiff entered into an exclusive buyer agency agreement with Fox Creek, providing that Fox Creek was his exclusive agent to assist him in the acquisition of real property in Davidson County, North Carolina, where the Craven property is located. In addition, there is no evidence that plaintiff ever entered into any agreement with Ms. Byrd; indeed, plaintiff never directly contacted Ms. Byrd regarding the Craven property. Ms. Byrd testified that she never agreed to attempt to secure the Craven property for plaintiff and that she communicated with Mr. Fry concerning the property during the several months prior to the sale as a mere courtesy and not because of the existence of any agreement.

We conclude the evidence, when viewed in the light most favorable to plaintiff, is insufficient to show the existence of any valid contract between plaintiff and defendants Byrd and High Rock to act as plaintiff's agent for the purpose of acquiring the Craven property. Therefore, the trial court properly granted defendants' motion for judgment notwithstanding the verdict as to plaintiff's claim for breach of contract.

**[2]** With respect to defendants' motion for judgment notwithstanding the verdict as to plaintiff's claim for breach of fiduciary duty, it is fundamental that a fiduciary relationship must exist between the parties in order for a breach of fiduciary duty to occur. *Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704 (2001). A fiduciary relationship

"exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."

*Stone v. McClam*, 42 N.C. App. 393, 401, 257 S.E.2d 78, 83, *disc. review denied*, 298 N.C. 572, 261 S.E.2d 128 (1979) (citation omitted). There is no evidence of such a relationship between plaintiff and defendants in the instant case. Ms. Byrd testified that she had never

been given any confidential information by Mr. Fry or plaintiff concerning the Craven property. In fact, as stated earlier, plaintiff was never in direct contact with Ms. Byrd. Ms. Byrd knew only that plaintiff was interested in buying the Craven property. Since there was insufficient evidence to show the existence of a fiduciary duty between plaintiff and defendants, the trial court properly granted defendants' motion for judgment notwithstanding the verdict as to plaintiff's claim for breach of fiduciary duty.

Since we affirm the trial court's order granting defendants' motion for judgment notwithstanding the verdict, it is unnecessary for us to address plaintiff's arguments regarding the trial court's conditional grant of a new trial.

Affirmed.

Judges HUDSON and THOMAS concur