**MANECKE v. KURTZ**

[222 N.C. App. 472 (2012)]

CHRISTOPHER B. MANECKE, Plaintiff v. JERROLD M. KURTZ and
DEBORAH A. KURTZ, Defendants

No. COA11-1447

(Filed 21 August 2012)

### 1. Real Estate—broker—real or apparent authority

The trial court did not err in an action over a failed real estate sale by granting summary judgment for defendants on the issue of whether defendants' broker acted with real or apparent authority. The evidence of record was that defendants' broker acknowledged that he did not possess actual authority to bind defendants by contract to purchase plaintiff's property and there was no evidence that defendants held the broker out as possessing that authority or permitted him to represent himself as having that authority. The broker himself acknowledged that his responsibility was to assist in negotiating the terms of the contract and not to enter into the contract.

### 2. Contracts—sale of real estate—communications with broker—not a binding contract

There was no material issue of fact as to whether a valid contract existed for the sale of real estate where communications between defendants' broker and plaintiff about a counteroffer did not bind defendants in contract, so that plaintiff could not maintain that defendants ratified the contract. The communications from defendants' broker did not constitute an acceptance in a manner recognized under the terms of the contract, which stated that it would become binding when it was signed or initialed by both parties.

### 3. Evidence—statute of frauds—underlying issue—no binding contract

In an action involving a failed real estate purchase, the question of whether the writings were sufficient to satisfy the statute of frauds was not considered where plaintiff did not establish that defendants entered into a binding contract.

Appeal by plaintiff from order entered 11 August 2011 by Judge F. Lane Williamson in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 April 2012.

*John F. Hanzel, P.A., by John F. Hanzel, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, LLP, by Mark P. Henriques and Brandie N. Smith, for defendant-appellees.*

BRYANT, Judge.

Where the record fails to disclose the existence of genuine issues of material fact as to whether defendants entered into a contract to purchase plaintiff's real property, the trial court did not err by granting defendants' motion for summary judgment.

In 2010, Christopher B. Manecke ("plaintiff"), a resident of Mecklenburg County, North Carolina sought to sell his residence located at 21104 Blakely Shores Drive, Cornelius, North Carolina. Plaintiff engaged the services of real estate broker Linda Schafer ("Schafer") to list the property for sale. Jerrold M. Kurtz and Deborah A. Kurtz ("defendants"), residents of the state of New Jersey, sought to purchase real property in North Carolina. Defendants engaged the services of Real Estate Broker Thomas Wells ("Wells") and entered into a standard buyer agency agreement as issued by the North Carolina Realtors Association to negotiate a contract for the purchase of real property.

On 22 August 2010, Wells sent an email to Schafer that he had an offer to purchase plaintiff's property. Attached to the email was a standard "Offer to Purchase and Contract" form signed by defendants offering to purchase plaintiff's property for $785,000. In response, Schafer emailed Wells a counteroffer to sell plaintiff's residence for $845,000 with an $8,000 repair contingency. In reply, Wells emailed Schafer the following message: "[defendants] are really excited about their new home and agree to> [sic] the counter offer [sic] [.]"[1] On 23 August 2010, Wells emailed Schafer a copy of an earnest money deposit check in the amount of $20,000. In the email, Wells informed Schafer that defendant Jerrold Kurtz would be overnighting the earnest money deposit check and that "[Wells] should also have the initialed changes to the contract tomorrow."

On 25 August 2010, in response to an email from Schafer inquiring as to the deposit, Wells emailed Schafer informing her that he had received defendants' deposit and that he would deliver it to Schafer's office on the morning of 26 August 2010. Wells also stated that he

---

1. Plaintiff received another offer to purchase his real property for the amount of $850,000.00 but rejected it in lieu of defendants' offer.

would have the initialed changes to the contract at that time, that he would ask defendants to select an attorney for the closing and arrange for the home inspection. At the request of defendants, Wells asked that the closing date be postponed from 30 September 2010 to 15 October 2010. On 26 August 2010, defendants informed Wells that they were not going to sign the counteroffer, and instructed Wells to tear up their earnest money deposit check. Wells informed Schafer via telephone that defendants were no longer interested in purchasing plaintiff's property.

On 17 November 2010, plaintiff filed suit against defendants in Mecklenburg County Superior Court seeking specific performance and, in the alternative, recovery for breach of contract. On 15 June 2011, defendants filed a motion for summary judgment. The trial court heard defendants' motion for summary judgment on 11 August 2011 and that same day, entered an order granting defendants' motion for summary judgment. Plaintiff appeals.

---

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment finding that there were no genuine issues of material fact. After setting out (A) the standard of review, plaintiff argues that there are genuine issues of material fact as to whether (B) Wells acted with actual or apparent authority, (C) there is a valid contract, and (D) the writings are sufficient to satisfy the statute of frauds.

### A.

"Summary judgment is proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Crocker v. Roethling*, 363 N.C. 140, 142, 675 S.E.2d 625, 628 (2009) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007)). When considering a motion for summary judgment, "[t]he trial court must consider the evidence in the light most favorable to the non-moving party." *Id.* (citations omitted). "[A]n issue is genuine if it is supported by substantial evidence, and [a]n issue is material if the facts alleged . . . would affect the result of the action[.]" *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal citations and quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]" *Id.* (internal citations and quotation marks omitted).

Where a summary judgment motion has been granted the two critical questions of law on appeal are whether, on the basis of the materials presented to the trial court, (1) there is a genuine issue of material fact and, (2) whether the movant is entitled to judgment as a matter of law.

*North River Ins. Co. v. Young*, 117 N.C. App. 663, 667, 453 S.E.2d 205, 208 (1995). "Review of summary judgment on appeal is necessarily limited to whether the trial court's conclusions as to these questions of law were correct ones." *Id.* (citing *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987)). "On appeal, this Court reviews an order granting summary judgment *de novo.*" *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 745, 641 S.E.2d 695, 697 (2007) (citing *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006)).

*B.*

[1] Plaintiff argues that there exists a genuine issue of material fact as to whether defendants' real estate broker Wells acted with actual or apparent authority to bind defendants by contract to purchase plaintiff's property. We disagree.

A principal is liable upon a contract made by its agent with a third party in three instances: when the agent acts within the scope of his or her actual authority; when a contract, although unauthorized, has been ratified; or when the agent acts within the scope of his or her apparent authority.

*Bell Atl. Tricon Leasing Corp. v. DRR, Inc.*, 114 N.C. App. 771, 774, 443 S.E.2d 374, 376 (1994).

" 'Actual authority is that authority which the agent reasonably thinks he possesses, conferred either intentionally or by want of ordinary care by the principal.' 'Actual authority may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question.' " *Leiber v. Arboretum Joint Venture, LLC*, ____ N.C. App. ____, ____, 702 S.E.2d 805, 812 (2010) (quoting *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 830, 534 S.E.2d 653, 655 (2000)).

Plaintiff argues there was a valid binding contract created by the actions of the parties as well as their "agents," including Wells. However, plaintiff fails to offer facts to establish that defendants granted Wells the authority necessary to bind them to a real estate contract. A real estate agent in North Carolina, absent special author-

MANECKE v. KURTZ

[222 N.C. App. 472 (2012)]

ity, does not have the power to bind his principal in a contract to convey real property. *Forbis v. Honeycutt*, 301 N.C. 699, 703, 273 S.E.2d 240, 242 (1981).

In an affidavit filed with the trial court, defendant Jerrold Kurtz states that he and his wife entered into a Buyer Agent Agreement with Wells "for the purpose of acquiring property in North Carolina." Defendant further avers that Wells was authorized to negotiate a contract for the purchase of real property but defendant denies vesting Wells with "any special authority . . . to enter into a binding contract . . . ."

In his deposition, Wells testified as follows:

Q.  And, at that point in time, do I understand correctly that [defendants] wanted to put in an offer. And then you explained to them, as part of that putting in an offer process, they needed to sign an agreement with you?

A.  Correct.

Q.  Did they sign the agreement with you before signing the offer?

A.  Correct.

Q.  Was the agreement that they signed with you the standard —

A.  Buyer agency—I'm sorry.

Q.  — buyer agency agreement –

A.  Correct.

Q.  — that's issued by the North Carolina Realtors Association?

A.  Correct.

Q.  Any changes to it?

A.  No.

. . .

Q.  [Defendants] never provided you with a power of attorney form to let—that would let you execute documents on their behalf?

A.  Correct.

Q.  You understand that, as a licensed real estate broker, your responsibility is to negotiate—assist your clients in negotiating the terms of a contract but that you don't have authority to enter into any binding contract on their behalf; is that right?

[Plaintiff's attorney]: Objection

A.  Correct.

. . .

Q.  So was it you understanding that there would only be a binding contract once the counteroffer submitted by . . . [plaintiff] was, in fact, initialed by [defendants]?

A.  Correct.

Q.  And without initials, there was not any enforceable contract pursuant to the offer that was submitted; current?

[Plaintiff's attorney]: Objection

A.  Correct.

The evidence of record here is that Wells acknowledged that he did not possess actual authority to bind defendants by contract to purchase plaintiff's property. Therefore, plaintiff has failed to establish a genuine issue of material fact as to whether Wells acted with actual authority.

Apparent authority "is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses." *Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 250, 565 S.E.2d 248, 252 (2002) (citations and quotations marks omitted). "Pursuant to the doctrine of apparent authority, the principal's liability is to be determined by what authority a person in the exercise of reasonable care was justified in believing the principal conferred upon his agent." *Branch*, 151 N.C. App. at 250, 565 S.E.2d at 253 (citations omitted).

Plaintiff contends that Wells' email to Schafer, plaintiff's real estate broker, stating that defendants "agree to> [sic] [plaintiff's] counteroffer" to purchase plaintiff's property, as well as, Wells' faxed copy of the earnest money deposit check sent to Schafer and Wells' email that he expected to receive the initialed copy of the contract

indicated that Wells acted with apparent authority if not actual authority to bind defendants to the contract to purchase plaintiff's property.

But plaintiff's contentions do not support the theory that Wells acted with apparent authority. Plaintiff's contentions cite no more than notifications from Wells that defendants agreed to the terms of plaintiff's counteroffer, that Wells had received a facsimile of a $20,000.00 check intended to serve as an earnest money deposit, and that Wells expected to receive the initialed copy of plaintiff's counteroffer. The record provides no evidence that defendants held Wells out as possessing authority to bind them in contract or permitted Wells to represent himself as having such authority. *See High Rock Realty, Inc.*, 151 N.C. App. at 250, 565 S.E.2d at 252. In fact, Wells acknowledged that his responsibility as defendants' real estate broker was to assist defendants in negotiating the terms of a contract, not to enter into a contract that would bind them. Therefore, plaintiff has failed to establish a genuine issue of material fact as to whether Wells acted with apparent authority. Accordingly, we overrule plaintiff's arguments.

*C.*

[2] Plaintiff next argues that there exists a genuine issue of material fact as to whether a valid contract exists between plaintiff and defendants. Plaintiff provides two arguments to support the existence of a contract between the parties. First, plaintiff contends that defendants ratified Wells' actions by sending the faxed copy of the $20,000.00 check. Second, plaintiff argues that the terms of the "Offer to Purchase and Contract," setting out the modes of communication by which the offer would become binding, in conjunction with the written email notifications provided to plaintiff, support the existence of a valid contract. We disagree.

"[W]hen one, with no authority whatever, or in excess of the limited authority given him, makes a contract as agent for another, or purporting to do so as such agent, the supposed principal, upon discovery of the facts, *may ratify* the contract . . . ." *Patterson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 266 N.C. 489, 492, 146 S.E.2d 390, 393 (1966) (emphasis added) (citations omitted).

> The act of a principal will establish ratification of an unauthorized transaction of an agent where "(1) . . . at the time of the act relied upon, the principal had full knowledge of all material facts relative to the unauthorized transaction, and (2) . . . the principal

had signified his assent or his intent to ratify by word or by conduct which was inconsistent with an intent not to ratify." *Carolina Equip. & Parts Co. v. Anders*, 265 N.C. 393, 400-01, 144 S.E.2d 252, 258 (1965).

*Barbee v. Johnson*, 190 N.C. App. 349, 356, 665 S.E.2d 92, 98 (2008).

Plaintiff contends that by agreeing to the terms of plaintiff's counteroffer, Wells acted to bind defendants to the contract to purchase plaintiff's property, and defendants ratified that contract by sending the facsimile of the $20,000.00 check intended to notify plaintiff that defendants were sending an earnest money deposit. As discussed in part B, *supra*, and as we further discuss herein, Wells' communications to plaintiff did not bind defendants in contract. Thus, plaintiff cannot maintain the argument that defendants ratified the contract to which Wells allegedly bound them.

Second, plaintiff also argues the terms of the Offer to Purchase and Contract support the contention that the contract was entered into and, thus, binding. The contract states:

This offer shall become a binding contract on the date that: (i) the last one of the Buyer and Seller has signed or initialed this offer or the final counteroffer, if any, and (ii) such signing or initialing is communicated to the party making the offer or counteroffer, as the case may be.

Following in paragraph 27, the contract reads:

Any notice or communication to a party herein may be given to the party or to each party's agent. Any written notice or communication in connection with the transaction contemplated by this contract may be given to a party or a party's agent by sending or transmitting it to any mailing address, e-mail address or fax number set forth in the "Notice Address" section below.

Plaintiff contends defendants accepted the offer made by plaintiff in Wells' email sent to Schafer stating that "[defendants] are really excited about their new home and agree to> [sic] the counter offer [sic][.]" Plaintiff also references Wells' email to plaintiffs' agent, Schafer, stating "[Defendant Jerrold Kurtz] is overnighting the [earnest money deposit] check tomorrow. We will get it on Wednesday. . . . I should also have the initialed changes to the contract tomorrow." Plaintiff asserts that these communications constitute defendants' acceptance in a manner recognized under the terms of the contract and bind defendants accordingly. We disagree.

> All contracts to sell or convey any lands . . . or any interest in or concerning them . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.

N.C. Gen. Stat. § 22-2 (2011).

Here, the contract states that it shall become binding when it has been signed or initialed by both parties. Wells' email that defendants "agree to> [sic] the counter offer [sic]" does not indicate that the contract reflecting the counteroffer had been signed. Moreover, Wells' email that he "should also have the initialed changes to the contract tomorrow" is not an indication that the contract had been initialed or signed. To the contrary, it indicates only when Wells expected to receive the signed or initialed contract.

Plaintiff has failed to establish a genuine issue of material fact as to whether defendants ratified a contract entered into by Wells or were bound by the terms of the counteroffer based on the email communications updating plaintiff about the status of the documents expected to be delivered. Accordingly, plaintiff's argument is overruled.

*D.*

[3] Lastly, plaintiff argues that there is a genuine issue of material fact as to whether the writings exchanged between the parties are sufficient to satisfy the statute of frauds. Plaintiff contends that there are numerous writings when read together establish a contract sufficient to satisfy the statute of frauds. We need not reach this issue.

As plaintiff has failed to establish that defendants have entered into a contract binding them to the purchase of plaintiff's real property, we need not consider whether the writings provided were sufficient to satisfy the statute of frauds, a defense to the formation of a contract.

For the foregoing reasons, the trial court's decision is affirmed.

Affirmed.

Chief Judge MARTIN and Judge McCULLOUGH concur.