DARYL DENSON, Plaintiff v. RICHMOND COUNTY, Defendant

No. COA02-672

(Filed 5 August 2003)

**Cities and Towns— health and dental benefits—former deputy sheriff—disability retirement—authority of board of county commissioners and county manager**
    A de novo review revealed that the trial court erred by entering judgment in favor of plaintiff former deputy sheriff who is on disability retirement on his claim against defendant county for continuation of health and dental benefits and by denying defendant county's motion for judgment notwithstanding the verdict, because: (1) plaintiff failed to present evidence of a valid and binding contract for the claimed insurance benefits formally entered by the board of county commissioners acting in its corporate capacity; and (2) plaintiff failed to show that the county manager had the authority to enter into such a contract.

Appeal by defendant from judgment entered 13 November 2001 and an order entered 8 January 2002 by Judge Larry G. Ford in Richmond County Superior Court. Heard in the Court of Appeals 13 March 2003.

*Robert S. Pleasant, for plaintiff-appellee.*

*Womble Carlyle Sandridge and Rice, PLLC, by Tyrus V. Dahl, Jr. and Alison R. Bost, for defendant-appellant.*

STEELMAN, Judge.

Plaintiff Daryl Denson ("plaintiff") was a deputy sheriff for Richmond County ("County" or "defendant") from 1986 to 1994. On 5 November 1993, plaintiff was directing traffic as part of his duties when he was struck by a drunk driver and severely injured. At the time of his injury, defendant provided plaintiff with health insurance coverage as an incident of his employment.

Plaintiff's injuries prevented him from returning to active duty as a deputy sheriff. He was not offered another position with the County Sheriff's Department, but he discussed with County Manager Richard Tillis ("Tillis") other available employment with the County. After learning that none of the County's available positions offered compensation comparable to that he had received as a deputy sheriff, plaintiff applied for disability benefits. He received a determination from the North Carolina Local Government Employees Retirement System that he was eligible for disability retirement benefits.

Before deciding to retire, plaintiff discussed with County employees and individual County Commissioners whether the County would continue providing health and dental insurance coverage after his retirement. Plaintiff met with Tillis and asked whether his health and dental insurance with the County would continue if he accepted disability retirement. As a result of his discussion with Tillis, plaintiff understood that he would continue to receive health insurance through the County after his retirement.

Plaintiff also discussed with Jimmy Maske, Bill McQuage and Herbert Diggs, all County Commissioners, whether he would continue to receive health insurance if he accepted disability retirement benefits. None of the Commissioners told plaintiff he would continue receiving health insurance, but "every one of them did say that they would do whatever deemed necessary to take care of it." These discussions occurred in the community or at the Commissioners' private

places of business, not during a meeting of the Board of County Commissioners..

Plaintiff also asked Sara Kirk, payroll clerk for the County Finance Office, if his health and dental insurance would continue if he accepted disability retirement benefits, and Kirk responded affirmatively. Plaintiff testified that these discussions played an important role in his decision to retire and to accept disability retirement benefits rather than taking a different job with the County.

After plaintiff retired, the County paid his health insurance premiums from June 1994 until February 1997, while he also received disability retirement benefits. In July 1996, plaintiff executed a settlement and release of his workers' compensation claim against the County. The County had a practice of continuing to provide health insurance coverage for employees after retirement if they had pending workers' compensation claims but terminated coverage when their claims were resolved.

Plaintiff's attorney, Kelly Williams ("Williams"), received a letter dated 3 February 1997 from County attorney John T. Page, Jr. ("Page"), which informed Williams that Page had "instructed the [C]ounty officials they can no longer pay medical or dental benefits for [plaintiff]. His medical and dental benefits under [C]ounty policies will terminate on the 28th day of February, 1997." Plaintiff testified that this was the first indication that his health insurance coverage would terminate.

Plaintiff also received a letter dated 3 February 1997 from Jimmy Quick ("Quick"), County Human Resources Officer, stating that the County would no longer pay his medical and dental insurance premiums. This letter recited the County personnel policy providing "both individual hospitalization and dental insurance to all employees occupying budgeted positions established full time." The letter further stated that since plaintiff no longer occupied a budgeted position with the County and the County had not paid medical and dental insurance premiums for other employees who were unable to return to work, he was no longer eligible for the benefit.

After receiving the letters regarding the termination of his health insurance coverage, plaintiff filed a complaint against defendant. Plaintiff's amended complaint sought the following relief: (1) recovery of $7,044.00, the difference between his salary and his workers' compensation benefits, which he contended defendant had agreed to pay him; (2) continuation of health and dental insur-

ance benefits based upon an agreement with defendant; (3) payment of holiday pay; and (4) injunctive relief. On 8 March 1999, Judge Michael E. Helms granted summary judgment for defendant as to plaintiff's claim for $7,044.00 but denied the motion as to the remaining claims.

Judge Larry G. Ford presided over a jury trial on the claims of continuation of health and dental insurance benefits and holiday pay. The jury found in favor of plaintiff on the health and dental insurance benefits issue and in favor of defendant on the holiday pay issue. The trial court denied defendant's motions for a directed verdict at the close of plaintiff's evidence and at the close of all evidence and denied defendant's motion for judgment notwithstanding the verdict.

Defendant asserts two assignments of error: (1) the trial court erred by entering judgment in favor of plaintiff on the claim for health and dental insurance benefits; and (2) the trial court erred by denying defendant's motion for judgment notwithstanding the verdict on the issue of health and dental insurance benefits.

Our standard of review of the denial of a motion for directed verdict and of the denial of a motion for judgment notwithstanding the verdict are identical. *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993) ("the same standard should be used in the determination of the sufficiency of the evidence with regard to both motions").

> The standard of review of a ruling entered upon a motion for judgment notwithstanding the verdict [or a motion for directed verdict] is whether upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the non-movant, the evidence is sufficient to be submitted to the jury.

*Branch v. Highrock Realty*, 151 N.C. App. 244, 249-50, 565 S.E.2d 248, 252 (2002), *disc. review denied*, 356 N.C. 667, 576 S.E.2d 330 (2003) (quoting *Fulk v. Piedmont Music Center*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000)). We apply *de novo* review to both a trial court's denial of a motion for directed verdict and denial of a motion for judgment notwithstanding the verdict. *See In re Will of Buck,* 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999) ("questions concerning the

sufficiency of the evidence to withstand a Rule 50 motion for directed verdict or judgment notwithstanding the verdict present an issue of law"). A motion for either directed verdict or judgment notwithstanding the verdict " 'should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.' " *Id.* at 250, 565 S.E.2d at 252 (quoting *Norman Owen Trucking Inc. v. Morkoski,* 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998)).

At trial, plaintiff asserted that by virtue of an agreement with defendant, he was entitled to receive health and dental insurance benefits until he becomes eligible for medicare benefits. It is important to note that this claim was tried and submitted to the jury solely upon the theory of an express contract between plaintiff and the County. It was not tried upon a theory of estoppel, quasi-contract or any other equitable theory. The trial court charged the jury as follows on the health and dental insurance benefits issue:

> The burden of proof on this issue is on Daryl Denson, the plaintiff, to satisfy you by the greater weight of the evidence that the County of Richmond did contract to provide health insurance benefits coverage as part of his retirement.

> A contract is a promise or a set of promises which the law will enforce. A contract is an agreement to do or not to do a particular thing.

N.C. Gen. Stat. § 153A-92 provides that "the board of [county] commissioners shall fix or approve the schedule of pay, expense allowances, *and other compensation* of all county officers and employees. . . ." N.C. Gen. Stat. § 153A-92(a) (2001) (emphasis added). "A county may purchase life insurance or health insurance or both for the benefit of all or any class of county officers and employees as part of their compensation." N.C. Gen. Stat. § 153A-92(d). A county has the power to enter into contracts. N.C. Gen. Stat. § 153A-11.

"[I]n order to make a valid and binding contract[,] the board of commissioners must act in its corporate capacity in a meeting duly held as prescribed by law." *Jefferson Standard Life Ins. Co. v. Guilford County,* 225 N.C. 293, 301-02, 34 S.E.2d 430, 436 (1945) (citations omitted); *see also Land-of-Sky Regional Council v. County of Henderson,* 78 N.C. App. 85, 336 S.E.2d 653 (1985), *disc. review denied,* 316 N.C. 553, 344 S.E.2d 7 (1986). A member of the board of county commissioners cannot contractually bind the county when

she acts "individually, informally, and separately." *Iredell County Board of Education v. Dickson*, 235 N.C. 359, 362, 70 S.E.2d 14, 18 (1952); *see also Davenport v. Pitt County Drainage Dist.*, 220 N.C. 237, 17 S.E.2d 1 (1941), *O'Neal v. Wake County*, 196 N.C. 184, 145 S.E. 28 (1928). An individual commissioner acting in her official capacity may make a contract binding on the county if so authorized by a formal action of the entire board. *Iredell, supra; London v. Board of Comm'rs*, 193 N.C. 100, 136 S.E. 356 (1927), *appeal after remand*, 195 N.C. 10, 141 S.E. 284 (1928).

We must therefore determine whether there is more than a scintilla of evidence that an agreement with plaintiff was made, authorized, or approved by the Board of County Commissioners, or that an official policy was adopted by the Board in its corporate capacity and applicable to all County employees at the time of plaintiff's retirement.

There is no evidence in the record of any written contract between plaintiff and defendant obligating defendant to provide health and dental insurance benefits to plaintiff until he becomes eligible for medicare. However, plaintiff points out there is evidence in the record that plaintiff had several conversations with individual County Commissioners and County employees concerning the continuation of health and dental insurance. These conversations included discussions with, among others, three individual County Commissioners and the County Manager.

Taken in a light most favorable to plaintiff, there is evidence that plaintiff had conversations with three individual County Commissioners who each assured plaintiff they would do whatever was needed to take care of the issue of plaintiff's health and dental benefits. However, there is no evidence that the full Board of County Commissioners ever took action on these assurances to continue plaintiff's health and dental insurance in order to make, adopt, or approve such an agreement, as would be required to turn these assurances by individual Commissioners into an agreement by the County to provide continuing health and dental insurance. *Jefferson Standard Life Ins. Co. v. Guilford County*, 225 N.C. 293, 300-01, 34 S.E.2d 430, 435 (1945) ("[I]n order to make a valid and binding contract the board of commissioners must act in its corporate capacity in a meeting duly held as prescribed by law.")

Nevertheless, taken in a light most favorable to plaintiff there is more than a scintilla of evidence that the County Manager made

assurances to plaintiff that his health and dental benefits would continue. Further, there is also evidence in the record that plaintiff did, in fact, continue to be provided health and dental insurance for an additional thirty-one months.

Thus, the key inquiry is whether the County Manager possessed the authority to bind the County to continue provision of plaintiff's health and dental insurance. There is no evidence in the record of any formal action by the Board of Commissioners delegating such authority to the County Manager. Therefore, we must determine whether a County Manager's powers under N.C. Gen. Stat. § 153A-82 allow the County Manager to bind the County in such a way without such express delegation by the Board of County Commissioners.

N.C.G.S. § 153A-82 provides:

The manager is the chief administrator of county government. He is responsible to the board of commissioners for the administration of all departments of county government under the board's general control and has the following powers and duties:

(1) He shall appoint with the approval of the board of commissioners and suspend or remove all county officers, employees, and agents except those who are elected by the people or whose appointment is otherwise provided for by law. The board may by resolution permit the manager to appoint officers, employees, and agents without first securing the board's approval. The manager shall make his appointments, suspensions, and removals in accordance with any general personnel rules, regulations, policies, or ordinances that the board may adopt. The board may require the manager to report each suspension or removal to the board at the board's first regular meeting following the suspension or removal; and, if the board has permitted the manager to make appointments without board approval, the board may require the manager to report each appointment to the board at the board's first regular meeting following the appointment.

(2) He shall direct and supervise the administration of all county offices, departments, boards, commissions and agencies under the general control of the board of commissioners, subject to the general direction and control of the board.

. . .

(4) He shall see that the orders, ordinances, resolutions, and regulations of the board of commissioners are faithfully executed within the county.

. . .

(8) He shall perform any other duties that may be required or authorized by the board of commissioners.

These statutory provisions do not grant the County Manager the authority to enter into an agreement for the continuation of health and dental insurance without authorization from the Board of Commissioners.

Moreover, at the time plaintiff retired, the Board had not adopted a policy which applied to all County employees or to employees who retired on disability like plaintiff. The County's personnel policy, adopted March 1991, provides that law enforcement officers retiring early are entitled to a special separation allowance if they have completed 30 years of creditable service or if they have reached the age of 55 and have completed at least 5 years of creditable service. Further, the County policy sets out the procedures for determining when employees may be separated for disabilities that prevent them from performing their job duties. The County's personnel policy does not contain any provisions for health insurance coverage for employees retiring on disability.

The retirement benefits handbook for law enforcement officers published by the State discusses how retirement benefits are calculated and mentions "accident and sickness insurance" as a possible benefit under a separate insurance plan for death benefits and temporary disability. The handbook does not address health insurance coverage after disability retirement.

Because plaintiff failed to present evidence of a valid and binding contract for the claimed insurance benefits formally entered by the Board of County Commissioners acting in its corporate capacity or that the County Manager had the authority to enter into such a contract, we hold the trial court erred in entering judgment for plaintiff and denying defendant's motion for judgment notwithstanding the verdict. We remand this matter to the trial court for entry of judgment in favor of defendant.

REVERSED AND REMANDED.

Judges McGEE and HUDSON concur.