CECI AUSTIN, Plaintiff, v. BALD II, L.L.C., Defendant

No. COA07-1152

(Filed 18 March 2008)

**1. Appeal and Error— appealability—denial of summary judgment—final judgment on merits**

An appeal from the denial of summary judgment was not considered after a final judgment on the merits.

**2. Nuisance— spite fence—evidence sufficient**

The trial court did not err by denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict in a spite fence action where there was more than a scintilla of evidence supporting each element of plaintiff's claim.

**3. Damages— punitive—spite fence**

The trial court erred by not instructing the jury on the issue of punitive damages in a spite fence action where defendant argued that punitive damages are categorically not available in

---

spite fence cases, but plaintiff here tendered evidence of pecuniary loss and personal discomfort, unlike *Burris v. Creech*, 220 N.C. 302.

Appeal by Plaintiff and Defendant from judgment entered 2 April 2007 and order entered 25 April 2007 by Judge Quentin T. Sumner in Pasquotank County Superior Court. Heard in the Court of Appeals 20 February 2008.

*C. Everett Thompson, II, for Plaintiff-Appellant.*

*Wills & Wills, P.C., by Gregory E. Wills, for Defendant-Appellant.*

ARROWOOD, Judge.

Bald II, L.L.C., (Defendant), owned and operated by Dr. Francis A. Bald (Dr. Bald) appeals from judgment entered on 2 April 2007 awarding Plaintiff damages in the amount of $1.00, and ordering Defendant to remove the ten foot wooden fence and erect a new fence no higher than six feet. This judgment was based upon a jury verdict determining that Defendant erected a spite fence along Ceci Austin's (Plaintiff's) property.

On 5 April 2007 Plaintiff filed a motion for new trial on the issue of punitive damages, which the trial court denied. From the judgment and order, Plaintiff also appeals. We affirm the trial court's judgment in part and remand in part for a new trial on the issue of punitive damages.

Plaintiff owns a home in Elizabeth City in Pasquotank County, and Defendant owns the adjoining property, upon which Riverwind Apartments (Riverwind) is located. Dr. Bald's son, Steven Bald (Bald), managed Riverwind. In 2005, Defendant planned to build additional condominiums on the property next to Riverwind—a plan which Defendant abandoned. On 20 December 2005, instead of building condominiums, Defendant erected a ten foot wooden fence on Plaintiff's property line, obstructing Plaintiff's view of the Pasquotank River and restricting the sunlight into Plaintiff's yard. The fence along the southern boundary of Defendant's property, which did not adjoin Plaintiff's property, was only six feet tall. Plaintiff alleged that Defendant "erected [the] fence for no legitimate purpose [or beneficial use] and has, in fact, erected the fence for the purpose of spite[.]" Plaintiff alleged that the fence was "a private nuisance" and that

Defendant built the fence "to satisfy vengeful and malicious motive to injure the Plaintiff[.]" Plaintiff stated that the fence will "detrimental[ly] effect . . . the property value" of her home.

In an affidavit submitted 6 September 2006, Plaintiff stated that "I have lived at [this residence] for more than 11 years[,] . . . [and] I have always had a small wooden fence at or near the boundary of my property with the defendant's property, which wooden fence was approximately three feet high." Plaintiff stated that the fence "[defined] my property line and . . . fenc[ed] in my small dog." When Plaintiff wrote Defendant to "advise him" that new ten feet tall fence "was very obtrusive, blocked my view of the Pasquotank River, blocked the sunlight in my side yard and blocked any breezes that I would normally get off the Pasquotank River[,]" she received "no response" from Defendant.

In an affidavit submitted 6 September 2006, Mary McLendon (McLendon) stated that "[s]hortly before construction [of the fence] began . . . I noticed two gentlemen who worked for Riverwinds . . . measuring and marking a line along the property line of [Plaintiff][.]" When McLendon asked the men "what they were doing[,]" the men replied, "building a fence[.]" McLendon inquired why, and the men said, "we are going to show her[,]" pointing towards Plaintiff's house.

On 28 August 2006, Defendant filed a motion for summary judgment, which the court denied on 19 September 2006, concluding that "there is a genuine issue of material fact[.]" The matter was tried before a jury on 5 March 2007, and on 2 April 2007, the trial court entered judgment ordering Defendant to remove the fence and to erect a new fence no taller than six feet; the court awarded Plaintiff $1.00 in compensatory damages. From this judgment, Plaintiff and Defendant appeal.

---

"A spite fence is one which is of no beneficial use to the owner and which is erected and maintained solely for the purpose of annoying a neighbor." *Welsh v. Todd*, 260 N.C. 527, 528, 133 S.E.2d 171, 173 (1963). " '[A] fence erected maliciously and with no other purpose than to shut out the light and air from a neighbor's window is a nuisance.' " *Barger v. Barringer*, 151 N.C. 433, 434, 66 S.E. 439, 439 (1909) (citing 12 Am. & Eng. Enc., 1058, and cases cited in note; 1 Cyc., 789). "It may be abated, subject to the same equitable principles which govern injunctive relief generally, and damages recovered if any have been sustained." *Welsh*, 260 N.C. at 528, 133 S.E.2d at 173 (citing *Burris v. Creech*, 220 N.C. 302, 17 S.E.2d 123 (1941)).

"Courts have denied equitable relief where the walls and fences complained of screened a defendant's premises from objectionable noises, odors, and unseemly conduct on the plaintiff's property." *Welsh*, 260 N.C. at 529, 133 S.E.2d at 173 (citations omitted).

## Summary Judgment

**[1]** In its first assignment of error, Defendant contends that the trial court erred by denying Defendant's motion for summary judgment.

This Court cannot consider an appeal from the denial of the summary judgment motion now that a final judgment on the merits has been made:

> Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.

> To grant a review of the denial of the summary judgment motion after a final judgment on the merits . . . would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result, we hold that the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.

*WRI/Raleigh, L.P. v. Shaikh*, 183 N.C. App. 249, 252, 644 S.E.2d 245, 247 (2007) (citing *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985)). Thus, we cannot address Defendant's first assignment of error.

## Rule 50

**[2]** By Assignments of Error Three, Four and Five, Defendant contends that the trial court erred by denying Defendant's motions for directed verdict at the close of Plaintiff's evidence and at the close of all evidence and its motion for judgment notwithstanding the verdict under Rule 50 of the North Carolina Rules of Civil Procedure.

"[T]he questions concerning the sufficiency of the evidence to withstand a Rule 50 motion for directed verdict or judgment notwithstanding the verdict present an issue of law[.]" *In re Will of Buck*, 350

N.C. 621, 624, 516 S.E.2d 858, 860 (1999). On appeal, this Court thus reviews an order ruling on a motion for directed verdict or judgment notwithstanding the verdict *de novo*. *See Denson v. Richmond County*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003). The standard of review of a ruling entered upon a motion for directed verdict and judgment notwithstanding the verdict is " 'whether upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury.' " *Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 250, 565 S.E.2d 248, 252 (2002) (quoting *Fulk v. Piedmont Music Ctr.*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000)). "A motion for . . . [directed verdict and] judgment notwithstanding the verdict 'should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.' " *Denson*, 159 N.C. App. at 412, 583 S.E.2d at 320 (quoting *High Rock Realty*, 151 N.C. App. at 250, 565 S.E.2d at 252); *see also N.C. Indus. Capital, LLC v. Clayton*, 185 N.C. App. 356, 362, 649 S.E.2d 14, 20 (2007).

The evidence presented by Plaintiff, viewed in a light most favorable to her, showed the following: Defendant built the fence surrounding the apartment complex six feet tall along the southern boundary of its property, but ten feet tall along Plaintiff's property. When asked the reason for building the tall fence, an employee of Defendant stated, "we're going to show her," indicating toward Plaintiff's home. Moreover, both Plaintiff and an employee of Defendant testified that no one had crossed from Plaintiff's property onto the Riverwind Apartments[.]" At trial, when asked, "[f]or the [twelve] years . . . that you've lived there, has there ever been an issue with people crossing from your property[,]" Plaintiff replied, "[n]ever, never, to my knowledge, ever." Moreover, when asked, "[h]ave you ever had anybody cross over from Ms. Austin's property, to your knowledge, onto the Riverwinds property[,]" Bald, the manager of Riverwind, responded, "[n]ot to my knowledge." Moreover, William Manning, Plaintiff's neighbor, testified that he addressed Dr. Bald, owner and operator of Defendant corporation about the "fence being high[,]" and Dr. Bald replied that "we wanted to build some apartments but the city . . . wouldn't let us." Then, immediately after the statement that the city thwarted Defendant's plans, Dr. Bald stated that Defendant decided to "build a security fence." Notably, Plaintiff served on the city council. When Manning asked Dr. Bald, "couldn't you make [the fence] smaller[?]" Dr. Bald and Manning argued briefly, and Dr. Bald asked Manning to "get off the property."

The evidence also shows that in 2005, Dr. Bald planned to build condominiums on the Riverwind Apartments property. McClendon, who lived two blocks from Riverwind Apartments testified that she was "aware . . . [that] there were . . . plans to build condominiums on [Defendant's] property[,]" because Defendant posted, in the Riverwind Health Club, "[floor] plans . . . showing . . . how the apartments would be situated[.]" Later, McClendon testified that Defendant took down the floor plans; McClendon inquired why, and an employee of Defendant stated, "Well[,] your city council took care of that[.]" Even though the evidence shows that Plaintiff was a member of the city council, she "played no role . . . in that condominium application process[.]" Defendant's fence was erected only a few months after the condominium project was abandoned, even though Dr. Bald testified in his deposition that the "security problems" had been "constant" at Riverwind "since 2003." Furthermore, the original condominium plans included a six foot fence along Plaintiff's property, but after the condominium project was abandoned, the fence grew to ten feet. Finally, the evidence shows that "the fence was still in progress when [Plaintiff] filed the lawsuit[.]"

After examining the evidence in the light most favorable to Plaintiff, and giving Plaintiff the benefit of every reasonable inference drawn therefrom, we conclude that the evidence was sufficient to be submitted to the jury. There was more than a scintilla of evidence supporting each element of Plaintiff's claim. The associated assignments of error are overruled.

Defendant does not bring forward or argue its Assignments of Error Two, Six and Seven; therefore, they are deemed abandoned. N.C.R. App. P. 28(b)(6).

## Punitive Damages

[3] In her Cross-Appeal, Plaintiff contends that the trial court erred by not instructing the jury on the issue of punitive damages. We agree.

" 'When a party's requested jury instruction is correct and supported by the evidence, the trial court is required to give the instruction.' " *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 55, 607 S.E.2d 286, 291 (2005) (quoting *Whiteside Estates, Inc. v. Highlands Cove, L.L.C.*, 146 N.C. App. 449, 464, 553 S.E.2d 431, 441 (2001)). "In reviewing the trial court's decision to give or not give a

jury instruction, the preliminary inquiry is whether, in the light most favorable to the proponent, the evidence presented is sufficient to support a reasonable inference of the elements of the claim asserted." *Blum v. Worley*, 121 N.C. App. 166, 168, 465 S.E.2d 16, 18 (1995) (citing *Anderson v. Austin*, 115 N.C. App. 134, 443 S.E.2d 737, 739 (1994)). "Once a party has aptly tendered a request for a specific instruction, correct in itself and supported by the evidence, failure of the trial court to render such instruction, in substance at least, is error." *Worley*, 121 N.C. App. at 168, 465 S.E.2d at 18 (citing *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972)). "[I]t is the duty of the trial court to charge the law applicable to the substantive features of the case arising on the evidence . . . and to apply the law to the various factual situations presented by the conflicting evidence." *Faeber*, 16 N.C. App. at 430, 192 S.E.2d at 2.

Plaintiff's cause of action in the instant case is based on the following: "A spite fence is one which is of no beneficial use to the owner and which is erected and maintained solely for the purpose of annoying a neighbor." *Welsh*, 260 N.C. at 528, 133 S.E.2d at 173. "[A] fence erected maliciously and with no other purpose than to shut out the light and air from a neighbor's window is a nuisance." *Barger*, 151 N.C. at 434, 66 S.E. at 439 (internal quotation marks omitted). The jury here found Defendant culpable of erecting a "spite fence".

"Punitive damages may only be awarded where the claimant proves the defendant is liable for compensatory damages and proves the existence of fraud, malice, or willful or wanton conduct by clear and convincing evidence." *Scarborough v. Dillards, Inc.*, 188 N.C. App. 430, 434, 655 S.E.2d 875, —— (2008); *see also* N.C. Gen. Stat. § 1D-15 (2007). "The claimant must prove the existence of an aggravating factor by clear and convincing evidence." N.C. Gen. Stat. § 1D-15(b) (2007). Malice, as defined by the punitive damages statute, means "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." N.C. Gen. Stat. § 1D-5(5) (2007).

In *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976) (citations omitted), our Supreme Court held:

> The aggravated conduct which supports an award for punitive damages when an identifiable tort is alleged may be established by allegations of behavior extrinsic to the tort itself . . . [o]r

AUSTIN v. BALD II, L.L.C.

[189 N.C. App. 338 (2008)]

it may be. established by allegations sufficient to allege a tort where that tort, *by its very nature*, encompasses any of the elements of aggravation.

*Id.* Notably, the definition of "spite fence," requires that the " 'fence [be] erected maliciously[.]' " *Barger*, 151 N.C. at 434, 66 S.E. at 439 (citation omitted); *see also Mehovic v. Mehovic*, 133 N.C. App. 131, 514 S.E.2d 730 (1999); N.C. Gen. Stat. § 1D-15(a)(2) (2007).

Defendant cites *Burris* for the proposition that punitive damages are categorically unavailable in "spite fence" cases. However, this argument is not the correct reading of our Supreme Court's holding in *Burris*. In *Burris*, the Court held that "[i]t is not thought the case is one in which punitive damages [should be] awarded." The Court reasoned that "[t]here is no evidence [here] that the plaintiff has suffered any pecuniary loss or personal discomfort[,]" and furthermore, "[a]n abatement of the nuisance . . . alleviate[d] the damage[.]" *Burris*, 220 N.C. at 304, 17 S.E.2d at 124. Thus, the Court held that the trial court erred by allowing the issue of punitive damages, based on these facts, to go to a jury.

We conclude that the Supreme Court in *Burris* did not intend to create a categorical exception to punitive damages in "spite fence" cases, but rather, held that under the facts of that case plaintiff had not suffered any pecuniary loss or personal discomfort that would entitle him to pecuniary or punitive damages. The facts in the instant case differ from those of *Burris*. Here, Plaintiff has tendered evidence of pecuniary loss and personal discomfort. We conclude that the evidence presented by Plaintiff is sufficient to meet the elements necessary to require the submission of the punitive damages to the jury. Thus, the trial court erred by failing to do so.

Affirmed in part, and Remanded in part for a new trial on punitive damages.

· Judges ELMORE and STROUD concur.