IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-780

No. COA22-478

Filed 6 December 2022

Cabarrus County, No. 20 CVS 664

CHRISTOPHER DAVIS, individually and as Administrator of the Estate of Felisa O. Davis, Plaintiff,

v.

MARLON FREDERICK WOODS, Defendant.

Appeal by defendant from an order filed 10 May 2021 by Judge Stephen R. Futrell, and orders entered 1 June 2021 and 11 January 2022 and judgment entered 28 June 2021 by Judge Lora Cubbage, in Cabarrus County Superior Court. Heard in the Court of Appeals 2 November 2022.

> *Blanco Tackabery & Matamoros, P.A., by Elliot A. Fus and Chad A. Archer, for plaintiff-appellee.*
>
> *Savage Law PLLC, by Donna P. Savage, for defendant-appellant.*

ARROWOOD, Judge.

¶ 1        Marlon Frederick Woods ("defendant") appeals from multiple orders and judgment entered by the trial court in favor of plaintiff. Defendant contends that the trial court erred in: (1) granting plaintiff's post-verdict motion for a new trial and altering the jury award; (2) denying defendant's motion for a new trial; (3) dismissing defendant's first cause of action for recovery; and (4) granting plaintiff's motion for partial summary judgment, dismissing defendant's second through sixth causes of

action in his complaint.  For the following reasons, we  affirm  in part and vacate and remand in part.

## I.     Background

On 4 October 2017, Felisa O. Davis ("Ms. Davis") died intestate.  Under North Carolina intestacy law, her estate passed to her son, Christopher Davis ("plaintiff"). Although she hired an attorney to prepare a trust, she had not executed estate planning documents at the time of her death.  In addition, Ms. Davis had life insurance and was employed with Associate Member Benefits Advisors ("AMBA"), which afforded her designated beneficiary benefits.  One such benefit was residual commissions ("commissions"), which awards insurance seller's beneficiaries a percentage of insurance premiums from returning customers.  In her signed "Agent Beneficiary Contingent Commissions Designation[,]" Ms. Davis indicated her designated beneficiary was plaintiff.

After her death, Ms. Davis's family and friends, including plaintiff and defendant, located her unexecuted trust document and met regarding how to proceed. Thereafter, defendant, a resident of Illinois who had at one time been in an intimate relationship with Ms. Davis but never had any legal relationship with her and had no legal right to any portion of her estate, engaged an attorney to draft an "Agreement of Distribution of the Felisa O. Davis Estate" ('the agreement").  Defendant provided

the attorney with all the information the document should include. In pertinent part, the agreement stated:

> [Plaintiff] certifies to be in agreement for the following distributions:
>
> 1. [Plaintiff] certifies to be in agreement he shall receive insurance proceeds set forth by [Ms. Davis].
>
> 2. The real property and all furniture located at 2849 Bivins Street, Davidson, NC 28036, the 2014 Lincoln MKT, all the remaining assets of the estate, the UNUM $50,000 life insurance policy thru [sic] AMBA (as beneficiary of this policy), and the residuals under AMBA (renewals paid monthly for the next six years) to [defendant].

On 21 October 2017, plaintiff, while in Chicago, was presented the agreement by defendant and signed the document. Defendant then sent the document to AMBA and began receiving the commission payments directly.

¶ 4    Following Ms. Davis's death, plaintiff continued to live in her North Carolina residence and have a relationship with defendant. Plaintiff even had defendant act as "trust protector" for his trust. However, their relationship deteriorated in August of 2018. Plaintiff became the administrator of Ms. Davis's estate on 8 February 2019 and thereafter contacted AMBA about the commissions and got a copy of the agreement. Plaintiff requested the commissions be sent to him, informing AMBA that he contested the agreement. By that time, defendant had received $89,975.33 in commission payments. It was also after he became administrator when plaintiff

learned there were over $10,000.00 worth of charges to Ms. Davis's account after her death.

¶ 5        On 24 February 2020, plaintiff filed a complaint against defendant alleging seven claims for relief on behalf of himself individually and as the administrator of Ms. Davis's estate.  In his complaint, plaintiff alleged defendant and Ms. Davis were no longer together at the time of her death and the agreement was thrust upon him while he was in Chicago for his mother's memorial service, and he had no opportunity to read the agreement or consult an attorney prior to signing it.  Plaintiff also alleged defendant told him to sign the document so that "[d]efendant [could] help take care of business, financial and/or legal matters relating to [Ms. Davis's] affairs."

¶ 6        In plaintiff's complaint, his first, fifth, sixth, and seventh claims for relief, individually and as administrator, alleged conversion and unjust enrichment.  Specifically, plaintiff claimed that defendant converted the commissions that were supposed to be paid to plaintiff and was unjustly enriched by accepting those payments.  Plaintiff's second claim for relief was for actual fraud, based on the misrepresentation of the contents of the agreement.  Plaintiff's third and fourth claims for relief were based on constructive fraud and breach of fiduciary duty.

¶ 7        Defendant filed his own complaint on 7 May 2020, alleging plaintiff had breached their "contract."  Furthermore, defendant made claims of fraud, conversion, breach of fiduciary duty, and unjust enrichment against plaintiff and the estate since

he "detrimenta[lly] reli[ed]" on the "contract" when he made payments on Ms. Davis's residence and vehicle.

¶ 8        Both parties filed motions to dismiss.  Plaintiff's motion for partial summary judgment sought dismissal of most of defendant's causes of action, and an order in his favor on the issue of whether he was entitled to compensatory damages for the commissions paid to defendant, and the amount of those commissions.

¶ 9        The matter came on for a hearing on plaintiff's Motion for Partial Summary Judgment the week of 26 April 2021 in Cabarrus County Superior Court, Judge Futrell presiding.  On 10 May 2021, Judge Futrell entered an order granting in part and denying in part plaintiff's motion.  The order dismissed all but one of defendant's claims, denied defendant's request for summary judgment, and denied plaintiff's motions regarding the commissions.  The remaining matters came on for trial on 17 May 2021, Judge Cubbage presiding.   At trial, both plaintiff and defendant testified.

¶ 10        Plaintiff testified that when Ms. Davis died, he was twenty-one-years-old, with no experience in legal or financial matters and he did not know how to administer an estate or pay household expenses.  After her death, plaintiff, defendant, and other family members gathered and decided that "[defendant] would take care of the mortgage, . . . utilities, [and ensure] . . . [Ms. Davis]'s debit card and credit cards were [closed]."    Plaintiff   testified   that   although   there   was   an   "expectation   that

[defendant]would come and live with [plaintiff] to take care of the household as well as look after [plaintiff][,]" he never did.

¶ 11        Plaintiff further testified that he did not know about the commissions until after he contacted AMBA and reiterated that he did not read the agreement before signing it and did not understand what some of the document meant. Still, he stated that he signed the document because defendant told him the agreement would allow them "to carry out what [Ms. Davis] had wanted."

¶ 12        Plaintiff also called Ms. Davis's friend and colleague, Patricia Erin Hall ("Ms. Hall") to testify. Ms. Hall testified that Ms. Davis told her before her death that she and defendant were "not together[,]" and that "she wanted everything to go to [plaintiff]." At the close of plaintiff's case, defense counsel made a motion for directed verdict arguing that as to the fraud claim, they did not believe that plaintiff had established there was a fiduciary relationship between the parties. Defendant's motion was denied, and he then took the stand to testify.

¶ 13        Defendant testified that he and Ms. Davis were together at the time of her death and presented a different version of how the agreement came to be signed. Defendant testified that at the family meeting following Ms. Davis's death, the family reviewed her unexecuted trust document and agreed that if those were her "final wishes," then they "should honor her by doing what her last wishes were." However, defendant acknowledged that the unexecuted trust document did not mention the

commissions. Defendant further stated that before plaintiff signed the agreement, he made sure plaintiff was "okay with [it][,]" "went over it" with plaintiff, had plaintiff read it, and "asked [plaintiff] a number of times" if he understood what the agreement meant.

¶ 14 Defendant made mortgage payments on the house plaintiff inherited and was residing at and car payments on Ms. Davis's vehicle until January 2019, but then stopped making the payments at the advice of his attorney. Defendant claimed that he personally paid $27,515.04 related to Ms. Davis's vehicle and property after her death. However, defendant acknowledged that money used to pay for some of these expenses "came out of the checking account listed under Advancetech[,]" defendant's company. Other expenses came out of defendant's UNUM account, which is listed in his name and was funded by money he received from Ms. Davis's life insurance policy as a beneficiary.

¶ 15 Furthermore, defendant testified that he was making a claim for some personal property located inside Ms. Davis's residence because he thought they "jointly" owned the property, even though the property was purchased out of Ms. Davis's account, and he could not provide documentation that he paid for most of the items. However, defendant did provide "guesstimat[ions]" of the cost and value of some of the property he was claiming.

¶ 16        Defendant also acknowledged that his attorney was told that some of the property he was claiming was boxed up and needed "to be retrieved" from Ms. Davis's residence, and responded that some items were not retrieved because they were no longer of interest to defendant. Defendant testified that he was willing to waive any claims to specific property. Defendant also conceded that any purchases made to Ms. Davis's accounts after her death would have been him, although he did not know her account was subject to the estate process, and he was not supposed to be spending Ms. Davis's money. Furthermore, defendant acknowledged he had "some role" in plaintiff's trust but that he did not know "what that entailed."

¶ 17        At the close of defendant's case, plaintiff's counsel made a motion for directed verdict for judgment as a matter of law with respect to defendant's claim for relief for $27,515.04. Plaintiff's counsel argued that defendant's claim should be dismissed because: (1) it was against the estate and not plaintiff individually; (2) the house was not an asset of the estate and there could "be no claim against the estate with respect to the house"; (3) the funds were from defendant's business account and defendant could not make a claim for the LLC; (4) the statute of limitations had run on the claims against the estate under N. C. Gen. Stat. § 28A-19-3(b)(2); (5) defendant was not entitled to personal property, or the value of such property, because he waived the right to some property during trial and because he could not prove that he paid for the items or provide any valuation of the items based on anything other than mere

guesswork; and (6) defendant admitted that he "illegally" charged Ms. Davis's account after her death.

¶ 18 The trial judge granted plaintiff's motion in open court and filed an order pertaining to the motion on 1 June 2021. Specifically, the trial court found that defendant's only surviving claim should be dismissed because the statute of limitations had run and, based on defendant's testimony, he "expressly waived" the claim "to the [personal property located in Ms. Davis's residence][.]" The court also granted a "directed verdict as a matter of law in favor of the [p]laintiff in that [defendant] did convert and was unjustly enriched by the monies in the account of [Ms.] Davis after she was deceased." Therefore, the only issues for the jury to decide were the plaintiff's claims related to the conversion of the commissions, unjust enrichment, breach of fiduciary duty, and fraud.

¶ 19 During the charge conference, defense counsel "stipulated that the amount of money [defendant] received from the . . . commissions . . . was $89,975.33." Additionally, defense counsel requested an instruction on the duty to read. The trial court declined to provide the instruction, finding that such an instruction was generally used in commercial cases and "because there [wa]s a fraud question . . . if [the jury] f[ound] there was no fraud they must be saying [plaintiff] had a duty to read." Thereafter, when given an opportunity, defense counsel did not object to the instruction.

¶ 20 After the jury retired, they sent questions asking: "[I]s [the agreement] a legally binding document?" and "Does [the agreement] cancel out the beneficiary consent [form] . . . ?" After some discussion, plaintiff's and defendant's counsel agreed with the court, that an appropriate response would be:

> The Court has already determined that as a matter of law [the agreement] is not a legally binding contract. Accordingly, it does not cancel [out the beneficiary form]. But the issue of whether [the agreement] is a binding contract does not dispose of the questions given to you. You should answer these questions based on the instructions provided.

¶ 21 On 20 May 2021, the jury returned a verdict in favor of plaintiff, finding defendant did convert the commissions from plaintiff and plaintiff was entitled to recover $62,460.29 in damages. Furthermore, the jury found in favor of plaintiff on most remaining claims and awarded $1.00 in damages for the constructive fraud, breach of fiduciary duty, and unjust enrichment claims. After the jury was dismissed, plaintiff's counsel expressed confusion with the amount of damages, but stated that he would speak with plaintiff and submit a motion if necessary.

¶ 22 On 8 July 2021, plaintiff filed a post-trial motion addressing the jury award, asking the court to either:

> (1) [s]et aside the verdict and the [final] [j]udgment only with respect to the amounts of damages awarded and enter judgment in the principal amount of $89,975.33 plus interest, in accordance with [N.C. Gen. Stat. § 1A-1,] Rule 50; or (2) [i]n the alternative, amend the [final] [j]udgment

to enter judgment in the principal amount of $89,975.33 plus interest; or (3) [i]n the alternative, grant a new trial on the issue of damages only [under N.C. Gen. Stat. § 1A-1, Rule 59 ("Rule 59")].

Defendant responded, requesting the court deny plaintiff's motion under Rule 50 and Rule 59. Specifically, defendant argued that the "stipulation" regarding the amount of commissions received was not a stipulation as "to the amount of damages."

¶ 23 Defendant also requested a new trial "based on prejudicial errors of law committed during the trial." In particular, defendant stated that the court's response to the jury question was "prejudicial, confusing[,] and not relevant to the issues submitted to the jury and constituted an error of law[,]" that the trial court erred in limiting defendant's cross-examination of plaintiff, and that the trial court erred in not providing the jury instruction on the duty to read. Based on these issues, defendant argued he was entitled to a new trial under Rule 59.

¶ 24 The matter came on for a hearing on parties' post-trial motions on 13 December 2021, Judge Cubbage presiding. On 11 January 2022, Judge Cubbage filed an order denying defendant's motion for a new trial and granting plaintiff's motion for a new trial under Rule 59 solely on the issue of damages. Judge Cubbage found that "[i]n light of the parties' stipulation that [d]efendant received $89,975.33 in residual commissions . . . that [p]laintiff's damages were $89,975.33 for all four claims on which the jury found liability . . . ." Therefore, Judge Cubbage set aside the

previous judgment and entered judgment in favor of plaintiff for that amount. On 9 February 2022, defendant filed notice of appeal.

## II.  Discussion

On appeal, defendant argues that the trial court erred in:  (1) granting plaintiff's post-verdict motion for a new trial solely on damages and altering the jury award; (2) denying defendant's motion for a new trial; (3) dismissing defendant's first cause of action for recovery against the estate for $27,515.04; and (4) granting plaintiff's motion for partial summary judgment as to defendant's remaining causes of action.  Although defendant stated other claims, they failed to submit arguments for these contentions, and they are therefore abandoned and will not be considered on appeal.  N.C.R. App. P. 28(a) (2022) ("Issues not presented *and* discussed in a party's brief are deemed abandoned.") (emphasis added);  *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358, *writ denied, disc review denied*, 360 N.C. 63, 623 S.E.2d 582 (2005) ("It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein.").

### A.  Plaintiff's Post-Trial Motion

Defendant's first claim on appeal  that the trial court abused its discretion in granting plaintiff's post-trial motion for a new trial pursuant to Rule 59 based only on damages and amending the judgment to reflect that of the stipulated amount. We find that although the trial court did not abuse its discretion in granting plaintiff's

motion for a new trial, the trial court lacked the authority to unilaterally amend the amount of damages.

¶ 27      Motions for a new trial are governed by Rule 59 of the North Carolina Rules of Appellate Procedure and are generally reviewed by the appellate courts for an abuse of discretion. *See Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). "Abuse of discretion results where the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted). "Consequently, an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Worthington*, 305 N.C. at 487, 290 S.E.2d at 605.

¶ 28      However, this Court has also recognized that the trial court's authority is not limitless. "A trial judge has the authority and discretion to set aside a jury verdict and grant a new trial—in whole or in part—under Rule 59; however, that rule does not allow a trial judge presiding over a jury trial to substitute its opinion for the verdict and *change the amount of damages to be recovered*." *Justus v. Rosner*, 254 N.C. App. 55, 71, 802 S.E.2d 142, 152 (2017), *aff'd*, 371 N.C. 818, 821 S.E.2d 765 (2018) (emphasis added).

¶ 29    In *Justus*, this Court found "[e]ven if the trial court had grounds to set aside the jury verdict, the trial court nevertheless erred in entering the [a]mended [j]udgment striking the jury's answer . . . and imposing a new verdict." *Id.* at 71, 802 S.E.2d at 152 (citation and internal quotation marks omitted). Therefore, the matter was "remand[ed] . . . for a new trial on the issue of damages only." *Id.* at 72, 802 S.E.2d at 153.

¶ 30    Here, the trial court granted plaintiff's motion for a new trial under Rule 59 *solely on the issue of damages*. Despite defendant's contention that this was an abuse of discretion, they themselves acknowledge in their brief that Rule 59 provides the trial court "the authority and discretion to set aside a jury verdict and grant a new trial—in whole *or in part*[.]" *Id.* at 71, 802 S.E.2d at 152 (emphasis added). Therefore, we find that the trial court did not abuse its discretion in granting plaintiff's motion for a new trial solely on the issue of damages. However, we find that the trial court lacked the authority to amend the amount of damages without defendant's consent.

¶ 31    Plaintiff claims that this case is distinguishable from *Justus* because it involves a stipulated amount. We disagree. "A stipulation is an agreement between the parties establishing a particular fact in controversy. The effect of a stipulation is to eliminate the necessity of submitting *that issue of fact to the jury*." *Smith v. Beasley*, 298 N.C. 798, 800, 259 S.E.2d 907, 909 (1979) (citations omitted and emphasis added). However, as defendant points out, the parties stipulated to "the

*amount of money [defendant] received* from the . . . commissions[,]" not the amount of damages. Had the stipulation been to damages, there would have been no need to ask the jury to determine damages on the verdict form. Accordingly, we find that the stipulated amount was not a stipulation of what the damages should be if the jury found in plaintiff's favor on any of the counts, and therefore could not be the basis for the trial court to amend the judgment.

¶ 32     "It is a cardinal rule that the judgment must follow the verdict, and if the jury h[as] given a specified sum as damages, the *court cannot increase or diminish the amount*, except to add interest, where it is allowed by law and has not been included in the findings of the jury." *Indus. Cirs. Co. v. Terminal Commc'ns, Inc.*, 26 N.C. App. 536, 540, 216 S.E.2d 919, 922 (1975) (citing *Bethea v. Town of Kenly*, 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964) (per curium)) (internal quotation marks omitted). We find the reasoning of *Industrial Circuits Company* instructive. In that case, this Court found the trial court lacked the authority to reduce the verdict, "without the consent of the interested party[,]" as an alternative to granting a new trial. *Id.* at 540, 216 S.E.2d at 922. We held that the trial court did not abuse its discretion in granting the Rule 59 motion, but still found that the trial court did not act "properly or with authority" when it changed the jury award amount. *See id.* Therefore, the case was remanded for a new trial on the issue of damages only. *Id.* at 548, 216 S.E.2d at 927.

¶ 33      Adopting this reasoning, we affirm the trial court's order granting plaintiff's motion for a new trial but vacate the order amending the jury verdict and remand the case for a new trial as to the amount of damages only.

### B.      Defendant's Motion for a New Trial

¶ 34      Defendant next contends the trial court erred in not granting his motion for a new trial because the trial court committed "errors of law" by providing a "prejudicial, confusing[,]"and irrelevant answer to the jury question, limiting defense counsel's cross-examination of plaintiff, and refusing to instruct the jury on the duty to read. We disagree.

¶ 35      As previously stated, the proper standard of review for a party's motion for a new trial under Rule 59 is abuse of discretion. *See Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). Therefore, this Court will not disturb a trial court's order on a Rule 59 motion unless "the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision" and the trial court's "ruling probably amounted to a substantial miscarriage of justice." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988); *Worthington*, 305 N.C. at 487, 290 S.E.2d at 605. Here, we find no abuse of discretion.

### 1.      Motion for a New Trial Based on Jury Instructions and Jury Question

¶ 36      Defendant first contends they were entitled to a new trial based on the trial court's refusal to provide the duty to read instruction and the trial court's response

to the jury's question. Specifically, defendant cites Rules 59(a)(8) ("[e]rror in law occurring at the trial and objected to by the party making the motion"), and (a)(5) ("[m]anifest disregard by the jury of the instructions of the court") to support this argument.

¶ 37  "In order to obtain relief under Rule 59(a)(8), a defendant must show a proper objection at trial to the alleged error of law giving rise to the Rule 59(a)(8) motion." *Davis v. Davis*, 360 N.C. 518, 522, 631 S.E.2d 114, 118 (2006). Here, although defendant's counsel did not object when the trial judge stated they would not be giving the instruction, nor at the close of the instruction, they did request the duty to read instruction during the charge conference. Our Supreme Court's recent decision in *State v. Hooper* has held that such a request is sufficient to preserve a challenge to a trial court's refusal to provide jury instructions for purposes of appellate review. *State v. Hooper*, 2022-NCSC-114, ¶ 26. However, we find that defendant's requested instruction, while preserved for appellate review, was properly rejected.

¶ 38  "[T]he duty to read an instrument or to have it read before signing it is a positive one, and the failure to do so, *in the absence of any mistake, fraud, or oppression*, is a circumstance against which no relief may be had[.]" *Mills v. Lynch*, 259 N.C. 359, 362, 130 S.E.2d 541, 543-44 (1963) (alterations in original) (emphasis added) (citations omitted). Here, fraud was at issue because one of plaintiff's claims was for actual fraud based on defendant's misrepresentation of the contents of the

agreement. Accordingly, the duty to read instruction was improper, and the trial court did not abuse its discretion by refusing to provide it. *See id.*

¶ 39 Additionally, we find no error in the trial court's response to the jury's question. When the trial court decided how it would respond to the jury's question, defense counsel failed to object. Therefore, "defendant failed to preserve his right to pursue a Rule 59(a)(8) motion." *Davis*, at 523, 631 S.E.2d at 118.

¶ 40 Defendant's argument is likewise without merit under Rule 59(a)(5). Other than the contention that the jury "clearly disregarded the trial court's instructions," defendant provides no case law or legal authority to support his contention. Accordingly, we affirm the trial court's decision to deny defendant's Rule 59 motion on these grounds.

2. Motion for a New Trial Based on Limitation of Cross-Examination

¶ 41 Defendant next contends that he was entitled to a new trial based on the trial court's limitations to his cross-examination of plaintiff. This issue was not preserved since defendant did not make an offer of proof as to what the cross-examination would have shown. *State v. Jacobs*, 363 N.C. 815, 818, 689 S.E.2d 859, 861 (2010) (citations omitted) (holding that the "substance of the witness' testimony must be shown before [the reviewing court] can ascertain whether prejudicial error occurred[,]" otherwise the [reviewing] court can "only speculate as to what a witness's testimony might have been").

¶ 42        However, defendant also cites Rule 59(a)(1) ("[a]ny irregularity by which any party was prevented from having a fair trial") in support of his argument. "Although the language of Rule 59(a)(1) is broad, [n]ew trials are not awarded because of technical errors. The error must be prejudicial. Moreover, [t]he party asserting the error must demonstrate that he has been prejudiced thereby." *Jonna v. Yaramada*, 273 N.C. App. 93, 105, 848 S.E.2d 33, 44 (2020) (internal quotation marks omitted) (citing *Sisk v. Sisk*, 221 N.C. App. 631, 635, 729 S.E.2d 68, 71 (2012), *disc. review denied*, 366 N.C. 571, 738 S.E.2d 368 (2013)).

¶ 43        However, defendant did not argue he was prejudiced. Nor do we see any abuse of discretion on the part of the trial court. For an alleged error to amount to abuse of discretion, it must be "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

¶ 44        Here, we need not speculate as to whether the trial court made a reasoned decision because the trial judge stated, on the record, she did not think defense counsel's line of questioning was appropriate because it appeared defense counsel was trying to "embarrass" plaintiff by asking him to read the agreement line by line. Additionally, the trial judge indicated that having plaintiff read the document was unnecessary because he had "already answered [defense counsel's] question that he

kn[ew] how to read" and what plaintiff understood about the document in court was not relevant since the agreement was signed five years prior.

We are unable to conclude that the trial court abused its discretion in ruling on defendant's Rule 59 motion. Accordingly, we affirm the trial court's order.

### C. Defendant's Action for Recovery

Defendant next argues that the trial court erred in granting plaintiff's motion for partial summary judgment, dismissing defendant's first cause of action for recovery against the estate in the amount $27,515.04. We disagree.

"[T]he questions concerning the sufficiency of the evidence to withstand a . . . motion for directed verdict or judgment notwithstanding the verdict present an issue of law[.]" *In re Will of Buck*, 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999). Thus, on appeal, this Court reviews an order ruling on a motion for directed verdict or judgment notwithstanding the verdict *de novo. See Denson v. Richmond County*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003). The standard of review of a ruling entered upon a motion for directed verdict is "whether upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury." *Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 249-50, 565 S.E.2d 248, 252 (2002) (citations omitted). "A motion for . . . [directed verdict and] judgment notwithstanding the verdict should be denied if there

is more than a scintilla of evidence supporting each element of the non-movant's claim." *Denson*, 159 N.C. App. at 412, 583 S.E.2d at 320 (quotation marks and citations omitted).

¶ 48     Here, plaintiff made a motion for directed verdict as to defendant's claim against the estate arguing, in pertinent part, that the statute of limitations had run, and defendant waived any right to property he was claiming through his testimony. At trial, defendant's counsel conceded the statute of limitations would have run within six months and declined to "make any particular argument on that." However, defense counsel did claim that defendant was entitled to some of the property he believed to be "jointly owned," and the values he assigned to said property "were not speculative."

¶ 49     As to claims against an estate, our statute states:

> [a]ll claims against a decedent's estate which arise at or after the death of the decedent . . . are forever barred against the estate, the personal representative, the collector, the heirs, and the devisees of the decedent unless presented to the personal representative or collector . . . within *six months after the date on which the claim arises*.

N.C. Gen. Stat. § 28A-19-3(b), (b)(2) (2021) (emphasis added).

¶ 50     In this case, Ms. Davis died in October 2017. Defendant testified he made payments towards Ms. Davis's property until January 2019. Although defendant filed a claim against the estate on 30 July 2019 for $15,280.05, which was denied, he

did not file the claim for $27,515.04 until May 2020. Because the latter claim is the only one defendant appealed, we need not consider the initial $15,280.05 claim. Therefore, because more than six months had passed between when the defendant's claim arose and the action for $27,515.04 against the estate, defendant's claim was barred by the statute of limitations. *See id.* Accordingly, the trial court did not err by granting plaintiff's motion for directed verdict.

### D.    Plaintiff's Motion for Partial Summary Judgment

¶ 51        Defendant's final argument on appeal is that the trial court erred in granting plaintiff's motion for partial summary judgment, which dismissed defendant's second through sixth causes of action. Specifically, defendant contends the order dismissing his claims for breach of contract, conversion, fraud, and unjust enrichment was in error because he presented "genuine issues of fact with regard" to these claims and, therefore, plaintiff was not entitled to judgment as a matter of law.

¶ 52        The standard of review on appeal from summary judgment "is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter

of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021). "We review an order allowing summary judgment *de novo*. If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Wilkins v. Safran*, 185 N.C. App. 668, 672, 649 S.E.2d 658, 661 (2007) (citations and quotation marks omitted). Evidence presented by the parties "must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co.*, 130 N.C. App. at 733, 504 S.E.2d at 577.

### 1. Breach of Contract

Defendant's second cause of action alleged the agreement was a "contract" that plaintiff breached "by stopping or causing the stoppage of the [commissions] from being paid out to [defendant][.]" Specifically, defendant argued there was a "[g]enuine issue of material fact . . . regarding the consideration under the agreement." We disagree.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract. The elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Soc'y for Hist. Pres. of Twentysixth N.C. Troops, Inc. v. City of Asheville*, 282 N.C. App. 700, 2022-NCCOA-218, ¶ 30 (citations and quotation marks omitted). "It is well established that in an action for breach of contract, a party's promise must be supported by consideration for it to be enforceable." *Elliott v. Enka-*

*Candler Fire & Rescue Dep't, Inc.*, 213 N.C. App. 160, 163, 713 S.E.2d 132, 135 (2011) (citation and brackets omitted).

¶ 55 "Consideration sufficient to support a contract consists of any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." *Id.* (quotation marks and citations omitted). "To constitute consideration, a performance or a return promise must be bargained for." *Chem. Realty Corp. v. Home Fed. Sav. & Loan Ass'n of Hollywood*, 84 N.C. App. 27, 30, 351 S.E.2d 786, 789 (1987) (citations omitted).

¶ 56 "Bargained for" means "the consideration and the promise bear a reciprocal relation of motive or inducement" and "the consideration induces the making of the promise and the promise induces the furnishing of the consideration." *Id.* at 31, 351 S.E.2d at 789 (citation omitted). Therefore,

> consideration analysis focuses on the dynamic of the parties' transaction. Where it is claimed that a contract exists between A and B, the question is whether A's promise induced B to make a counter-promise or to begin performance of some act or to forbear from taking some action. The flip side to this question is whether A was induced to make his promise in exchange for B's promise or performance. Without this reciprocity of inducements-characterized as a 'bargained-for exchange'-no consideration exists to support the contract.

*Cline v. Dahle*, 149 N.C. App. 975, *4 563 S.E.2d 307 (2002) (unpublished) (citing J. Hutson and S. Miskimon, *North Carolina Contract Law § 3-6* (2001)).

For example, in *Chemical Realty Corporation v. Home Federal Savings and Loan Association of Hollywood*, this Court found that the promise of the defendant company to purchase the plaintiff company was not supported by bargained for consideration. *Chem. Realty Corp.*, 84 N.C. App. at 32, 351 S.E.2d at 789. Specifically, this Court found that the letter itself made "no recital of any consideration for defendant's promise[,]" and although the plaintiff acted in reliance on the letter, "even assuming defendant's promise was the inducement for plaintiff's performance, plaintiff . . . [did] not show[] expressly that its performance was the inducement for defendant's promise." *Id.* at 32, 351 S.E.2d at 789-90.

Here, the agreement is likewise without consideration because there was no bargained-for exchange. The agreement specifically granted defendant Ms. Davis's residence, her car, and the commissions, but provides nothing to plaintiff other than the life insurance policy to which he was already entitled. Therefore, there could be no bargained for exchange on the part of plaintiff because there was no reciprocity of inducements. *Id.* at 32, 351 S.E.2d at 789. Accordingly, we affirm the trial court's granting of plaintiff's motion for summary judgment, which dismissed defendant's breach of contract claim, because there was no genuine issue of fact as to consideration.

## 2.     Conversion and Fraud

¶ 59     As defendant acknowledges, his claims for conversion and fraud flow from his claim for breach of contract. Accordingly, we also affirm the order granting plaintiff's motion for directed verdict on these causes of action.

### 3.     Unjust Enrichment

¶ 60     Finally, defendant argues that the trial court erred in granting plaintiff's directed verdict dismissing defendant's cause of action for unjust enrichment. Specifically, defendant claims there was a genuine issue of fact as to whether plaintiff was unjustly enriched by defendant's payments towards Ms. Davis's residence and her vehicle. We agree.

¶ 61     To establish a *prima facie* claim for unjust enrichment a party must show: (1) "one party must confer a benefit upon the other party"; (2) "the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances"; (3) "the benefit must not be gratuitous"; (4) "the benefit must be measurable"; and (5) "the defendant must have consciously accepted the benefit." *Butler v. Butler*, 239 N.C. App. 1, 7, 768 S.E.2d 332, 336 (2015) (citation omitted).

¶ 62     "A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law. A quasi contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554,

556 (1988). However, "[t]he recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for their value." *Butler*, 239 N.C. App. at 7, 768 S.E.2d at 337 (citing *Wright v. Wright*, 305 N.C. 345, 350, 289 S.E.2d 347, 351 (1982)).

¶ 63        Although we agree that any claim against the estate has been barred by the statute of limitations, as discussed above, we do find there is a genuine issue of material fact as to whether plaintiff individually was unjustly enriched by some payments defendant made towards Ms. Davis's residence and  vehicle. Defendant specifically stated in his complaint that these payments were "not gratuitously" made. Furthermore, these payments conferred a benefit to plaintiff, who was the owner of, and resided in, the house which he inherited from his mother at the time of her death while defendant made these payments, and these payments are readily measurable.

¶ 64        However, we note there is also evidence in the form of an admission by defendant that he used assets from an account of a non-party to make certain of these payments, and he would therefore not be entitled to recover those payments in a claim for unjust enrichment. Accordingly, to the extent that defendant can show that he made payments from his individual assets for the benefit of plaintiff's property, summary judgment was improper with respect to defendant's unjust enrichment claim and is hereby vacated.

### III.    Conclusion

For the foregoing reasons, we hold that while the trial court properly awarded a new trial on the issue of damages, it did not have the authority to amend the jury award and increase the amount awarded to plaintiff.  Accordingly, with respect to that portion of the trial court's order, we vacate and remand for a new trial on damages only.  Furthermore, we vacate the order granting summary judgment on defendant's unjust enrichment claim to the extent that defendant used his own personal assets to pay expenses on plaintiff's property but affirm the orders and judgments in all other respects.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

Judges ZACHARY and GRIFFIN concur.